UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GREG ZEBROWSKI,<br><br>                Plaintiff,<br><br>vs.<br><br>AMERICAN STANDARD INSURANCE<br>COMPANY OF WISCONSIN,<br><br>                Defendant. | CIV. 16-5018-JLV<br><br><br>ORDER |

Plaintiff Greg Zebrowski initiated this action against defendant American

Standard Insurance Company of Wisconsin. (Docket 1). Plaintiff's complaint

advances four counts: breach of contract, bad faith, attorney's fees and

punitive damages. Id. at pp. 3-5. Defendant filed an answer. (Docket 6, later

amended at Docket 23). Defendant moves to dismiss each count of plaintiff's

complaint. (Docket 11). The court has jurisdiction. 28 U.S.C. § 1332; (Docket

1 at p. 1).

**FACTS**

In October 2011, Travis Neal was intoxicated while driving his car and he

rear-ended plaintiff's car. (Docket 1 at p. 1). Plaintiff suffered serious injuries.

Id. at pp. 1-2. When this car accident occurred, defendant was providing

plaintiff with underinsured motorist coverage. Id. at p. 2. The insurance

contract covered plaintiff's initial medical payments. Id. Plaintiff settled with

Mr. Neal's insurance provider, SAFECO Insurance Companies, for $90,000 in

December 2013. Id.

By February 2014, plaintiff requested his policy limit of $150,000 from defendant.  Id.  Defendant denied the request in May 2014.  Id.  That month plaintiff filed suit in South Dakota state court.  Id.; (Docket 13-1).  Plaintiff's state court complaint consisted of one count: underinsured motorist coverage. (Docket 13-1 at p. 4).  Before trial commenced, "the parties stipulated that the underinsured motorist coverage policy limits applicable to [the] case [were] $250,000 and the liability limits from Travis Neal's insurer [were] the amount of $100,000[, which] must be subtracted from the underinsured motorist coverage policy limits." (Docket 13-4 at p. 2).  Based on that agreement, "any verdict in excess of $250,000 would result in the Court having to enter a judgment in the amount of $150,000."  Id.

In September 2015, a jury found for plaintiff and awarded him $400,000 plus $14,327 in interest for his injuries and damages.  (Docket 1 at p. 3).  The state court judge entered a judgment in the amount of $154,099.83, reflecting the parties' stipulation plus interest.  (Docket 13-4 at pp. 2-3).  Defendant satisfied the judgment on October 12, 2015.  (Docket 13-5).

Plaintiff then filed this action, claiming:

Defendant . . . engaged in a deliberate pattern and practice of ignoring and undervaluing Plaintiff's claim under its policy of insurance in order to decrease the amount of claim expenses it must pay to its insured. . . .

Defendant unreasonably and fraudulently elevated its own interests above those of Plaintiff, did not promptly or in good faith pay the claim of its insured, and refused to settle in good faith, forcing Plaintiff to sue for the benefit to which he was entitled under his insurance contract. . . .

Defendant deliberately handled Plaintiff's claim in a manner designed to force its insured to capitulate to a low settlement offer or commence litigation, which Defendant knows is expensive and stressful, and which invariably delays and dilutes payment of benefits that Defendant knows are owed and to which its insured was entitled.

(Docket 1 at p. 3).  Defendant denies these allegations and moves to dismiss the complaint.  (Dockets 23 at p. 3 & 11).

## ANALYSIS

"It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state."  In re Baycol Prods. Litig., 616 F.3d 778, 785 (8th Cir. 2010) (internal quotation marks omitted). Defendant provides several grounds for dismissing the counts in plaintiff's complaint.  (Docket 11).  Applying South Dakota law to substantive issues, the court addresses each parties' arguments count-by-count.

## I.  COUNT I: BREACH OF CONTRACT

In support of his breach of contract claim, plaintiff asserts:

Defendant was informed of the October 6, 2011, collision resulting in injury to Plaintiff, and Plaintiff advised Defendant of his claim for underinsured motorist benefits under his policy of insurance, and otherwise fully cooperated with defendant in connection with the claim. . . .

Defendant failed its duty under the contract of insurance to fairly and adequately evaluate the claim and pay the full amount of damages owed its insured, and refused to offer a reasonable and good faith settlement, all in breach of its contract of insurance with Plaintiff.

(Docket 1 at p. 3).

Defendant presents two bases for dismissing this cause of action: it is barred by (1) South Dakota statute and (2) issue preclusion. (Docket 11 at p. 2).

## A. SDCL § 58-11-9.5

First, defendant argues SDCL § 58-11-9.5 prohibits plaintiff's breach of contract claim. (Docket 12 at pp. 9-10). That statute provides:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

SDCL § 58-11-9.5. Because defendant satisfied the judgment from the state case, it contends plaintiff seeks double recovery, which is inconsistent with the statute. (Docket 12 at pp. 9-10).

In response, plaintiff argues defendant incorrectly characterizes its cause of action. (Docket 17 at pp. 5-7). Plaintiff relies on Garrett v. BankWest, Inc., the South Dakota Supreme Court case establishing the following principle: "Every contract contains an implied covenant of good faith and fair dealing which prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract." 459 N.W.2d 833, 841 (S.D. 1990). The Garrett Court held this principle "allows an aggrieved party to sue for breach of contract when the other contracting party, by his lack of good faith, limited or completely prevented the aggrieved party from

4

receiving the expected benefits of the bargain.  A breach of contract claim is allowed even though the conduct failed to violate any of the express terms of the contract agreed to by the parties." Id.

Plaintiff goes on to argue his complaint articulates a breach of contract claim as Garrett contemplates.  (Docket 17 at pp. 6-7).  According to defendant, there are many problems with plaintiff's breach of contract claim even if it is understood as relating to an implied covenant of good faith and fair dealing. (Docket 21 at pp. 6-12).

Even if the court finds plaintiff properly articulates a breach of contract claim consistent with SDCL § 58-11-9.5, defendant's second argument—issue preclusion—requires dismissal of the cause of action.

## B.  ISSUE PRECLUSION

"The law of the forum that rendered the first judgment controls the res judicata analysis." Schaefer v. Putnam, 827 F.3d 766, 769 (8th Cir. 2016). When resolving a motion to dismiss based on res judicata, the court "accept[s] the non-moving party's factual allegations as true and construe[s] all reasonable inferences in favor of the nonmovant." Id.  "Res judicata consists of two preclusion concepts: issue preclusion and claim preclusion." Estate of Johnson by & through Johnson v. Weber, 898 N.W.2d 718, 733 (S.D. 2017). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided, and also is referred to as direct or collateral estoppel." Id. (internal quotation marks omitted).  In contrast, claim preclusion has a broader effect because it "prevents the relitigation of a claim

or issue that was 'actually litigated *or which could have been properly raised.*' "
Dakota, Minn. & E. R.R. Corp. v. Acuity, 720 N.W.2d 655, 660 (S.D. 2006)
(emphasis added) (quoting Nelson v. Hawkeye Sec. Ins. Co., 369 N.W.2d 379,
381 (S.D. 1985)).  "The doctrine of res judicata is premised on two maxims: [a
person] should not be twice vexed for the same cause and it is for the public
good that there be an end to litigation.  Res judicata seeks to promote judicial
efficiency by preventing repetitive litigation over the same dispute."  People ex
rel. L.S., 721 N.W.2d 83, 90 (S.D. 2006) (internal citations and quotation
marks omitted).

   "The collateral estoppel doctrine 'bar[s] relitigation of an essential fact or
issue involved in the earlier suit' if a four-part test is satisfied: '(1) Was the
issue decided in the prior adjudication identical with the one presented in the
action in question? (2) Was there a final judgment on the merits? (3) Was the
party against whom the plea is asserted a party or in privity with a party to the
prior adjudication? (4) Did the party against whom the plea is asserted have a
full and fair opportunity to litigate the issue in the prior adjudication?' "
Hamilton v. Sommers, 855 N.W.2d 855, 866 (S.D. 2014) (quoting Estes v.
Millea, 464 N.W.2d 616, 618 (S.D. 1990)).

   "In examining whether these elements are present, a court should
construe the doctrine liberally, unrestricted by technicalities.  However,
because the doctrine bars any subsequent litigation, it should not be used to
defeat the ends of justice.  Instead, courts 'must give careful consideration to
the case at hand before erecting the doctrine's preclusive bar.' "  L.S., 721

6

N.W.2d at 90 (quoting <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 401 (1981)).

### i. SAME ISSUE

"In the first step, [the court] must make a 'determination of the precise issues' litigated and decided in the state proceeding [ ] and the issues raised in the present case."[1] <u>SDDS, Inc. v. State of S.D.</u>, 994 F.2d 486, 493 (8th Cir. 1993) (quoting <u>Melbourn v. Benham</u>, 292 N.W.2d 335, 338 (S.D. 1980)).

In arguing this element of issue preclusion, defendant asserts that when "determining whether two separate suits involve the same claim or cause of action, South Dakota courts apply Restatement (Second) Judgments, § 24, which is often referred to as the 'transaction test.'" (Docket 12 at p. 12). This statement is not true. Whether a state applies the transaction test set forth in the Restatement is a significant point, and when courts discuss or adopt the test, they often provide thorough reasoning. <u>See, e.g.</u>, <u>Villareal v. United Fire & Casualty Co.</u>, 873 N.W.2d 714, 719-25 (Iowa 2016) (extensively discussing the transaction test).

---

[1]Under South Dakota law, a court's analysis of the similarity in the prior judgment and the current case is comparable in both issue and claim preclusion. <u>Compare</u> <u>Hamilton</u>, 855 N.W.2d at 866 (issue preclusion), <u>with</u> <u>L.S.</u>, 721 N.W.2d at 90 (claim preclusion). South Dakota courts have clearly delineated how to conduct that analysis in claim preclusion: "the Eighth Circuit [ ] in <u>Hanson v. Hunt Oil Co.</u>, 505 F.2d 1237, 1240 (8th Cir. 1974), established the test which this Court has repeatedly applied: whether the wrong for which redress is sought is the same in both actions." <u>Dakota</u>, 720 N.W.2d at 661 (internal quotation marks omitted). But South Dakota cases applying issue preclusion have not directly held the same inquiry must be used. <u>See</u> <u>Hamilton</u>, 855 N.W.2d at 866; <u>Estes</u>, 464 N.W.2d at 618. As a result, in stating the law on this aspect of issue preclusion, the court is careful to draw from South Dakota cases (or federal cases citing South Dakota law) applying issue preclusion—and not claim preclusion.

As noted above, South Dakota law applies to issue preclusion in this case. <u>See</u> <u>Schaefer</u>, 827 F.3d at 769. To support defendant's argument about the transaction test, it cites four cases: one case from the United States Court of Appeals for the Eighth Circuit, two from the United States District Court for the District of South Dakota and a South Dakota Supreme Court case. (Docket 12 at p. 12). The South Dakota Supreme Court case, <u>Christians v. Christians</u>, cites the <u>Restatement (Second) of Judgments</u> for the background rationale of res judicata, but it does not adopt the transaction test. <u>See</u> 637 N.W.2d 377, 387 (S.D. 2001).

The federal court cases defendant relies on do not apply South Dakota law. In each case, the party invoking res judicata does so based on a prior *federal* case. <u>See</u> <u>Lane v. Peterson</u>, 899 F.2d 737, 739-42 (8th Cir. 1990); <u>Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.</u>, 496 F. Supp. 2d 1044, 1047-52 (D.S.D. 2007); <u>First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.</u>, No. CIV. 06-4101, 2008 WL 895931, at *1-4 (D.S.D. Mar. 31, 2008). Those cases apply federal res judicata principles. <u>See</u> <u>Porn v. Nat'l Grange Mut. Ins. Co.</u>, 93 F.3d 31, 33-34 (1st Cir. 1996) ("Because the judgment in the first action was rendered by a federal court, the preclusive effect of that judgment in the instant diversity action is governed by federal res judicata principles.").[2] "This is true whether the first action is based on federal question

---

[2]Plaintiff commits a parallel error. To set out the elements of issue preclusion, he cites <u>Loudner v. United States</u>, 330 F. Supp. 2d 1074, 1079 (D.S.D. 2004). (Docket 17 at p. 9). The prior judgment in <u>Loudner</u> came from a federal court and not a South Dakota court. <u>Loudner</u>, 330 F. Supp. 2d at 1079-80.

jurisdiction or on diversity jurisdiction." <u>Rymer Foods, Inc. v. Morey Fish Co.</u>, 116 F.3d 1482, at *4 (7th Cir. 1997) (unpublished opinion); <u>see</u> <u>United States v. Saint Louis Univ.</u>, No. 07-CV-0156, 2012 WL 359995, a *2 (S.D. Ill. Feb. 2, 2012) (citing <u>Rymer</u> for this proposition).

The South Dakota Supreme Court has not adopted the transaction test. As stated above, the court "must make a 'determination of the precise issues' litigated and decided in the state proceeding [ ] and the issues raised in the present case." <u>SDDS</u>, 994 F.2d at 493 (quoting <u>Melbourn</u>, 292 N.W.2d at 338).

While plaintiff grounds his breach of contract claim in the implied covenant of good faith and fair dealing, he is still asserting a contract breach. Whether defendant violated the contract's express provisions or an implied covenant, plaintiff must demonstrate " '(1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages.' " <u>Dziadek v. Charter Oak Fire Ins. Co.</u>, 867 F.3d 1003, 1009 (8th Cir. 2017) (quoting <u>Bowes Constr., Inc. v. S.D. Dep't of Transp.</u>, 793 N.W.2d 36, 43 (S.D. 2010)).  The contract at issue is the underinsured motorist coverage defendant provided plaintiff.  In <u>Dziadek</u>, where Ms. Dziadek sued for violation of an underinsured motorist insurance agreement, the Eighth Circuit stated South Dakota law entitled Ms. Dziadek to "any 'detriment caused by the breach,' including interest." <u>Id.</u> (quoting SDCL § 21-2-2).  The South Dakota statute the Eighth Circuit cited provides: "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation with interest thereon." SDCL § 21-2-2.

"[T]he precise issue[ ]" in the present action is defendant's violation of its contract with plaintiff. See SDDS, 994 F.2d at 493. The remedy is "the amount due by the terms of the obligation with interest thereon." SDCL § 21-2-2. In his state court case, plaintiff pursued the portion of his insurance policy limits not covered by Mr. Neal's insurance. (Docket 13-1). He believed defendant violated their insurance agreement by not paying the full extent of his policy, and he sought redress by recovering what he did not collect from SAFECO. Id. That is a claim for breach of contract. Although his prior case held defendant responsible for express terms in its insurance agreement with plaintiff, and this case relates to violating an implied covenant of good faith and fair dealing, both actions are for breach of a contract. They involve the same "precise issue[,]" SDDS, 994 F.2d at 493, and the same remedy is available. SDCL § 21-2-2.

The court finds the first element of issue preclusion is met.

## ii.  FINAL JUDGMENT, PARTIES AND OPPORTUNITY

Neither party disputes that plaintiff's state court case resulted in a final judgment which defendant satisfied. (Dockets 13-4 & 13-5). Plaintiff and defendant are the same parties as those in the prior case. (Docket 13-1). Based on the court's determination plaintiff's state court action presented the same issue as his current breach of contract claim, the court finds plaintiff had "a full and fair opportunity" to litigate breach of contract. Hamilton, 855 N.W.2d at 866. The judgment plaintiff received evidences this. (Docket 13-4).

10

The court finds the second, third and fourth elements of issue preclusion are met. The court dismisses count I.

## II. COUNT II: BAD FAITH

To set forth his bad faith cause of action, plaintiff asserts:

Defendant tortuously failed to conduct a reasonable good faith investigation of Plaintiff's claim and instead set about to administer the claim in a manner calculated only to provide Defendant with a basis to underpay Plaintiff's claim and reduce Defendant's expenses. . . .

Defendant either knew or should have known of the lack of reasonable basis for denial of benefits. . . .

Defendant also failed to give equal consideration to the interests of Plaintiff, ignored the facts that support his claim, and ignored law that requires payment of the claim. . . .

Defendant's actions constitute bad faith, including but not limited to, the following:

a. Defendant breached its duty to adjust Plaintiff's claim in good faith and to investigate every available source of information in pursuit of minimum facts necessary to support a denial of the claim;

b. Defendant took actions which injured the Plaintiff's rights;

c. Defendant failed to fulfill their continuing duty to investigate and evaluate Plaintiff's claim.

(Docket 1 at p. 4).

Defendant provides two grounds for dismissing plaintiff's bad faith claim. (Docket 11 at p. 3). First, defendant argues Rule 12(c) of the Federal Rules of Civil Procedure requires dismissal because the cause of action fails to plead sufficient facts. Id. And second, defendant contends claim preclusion bars plaintiff's bad faith count. Id.

11

## A. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standards that govern motions to dismiss under Rule 12(b)(6) also govern motions for judgment on the pleadings under Rule 12(c)." Ellis v. City of Minneapolis, 860 F.3d 1106, 1109 (8th Cir. 2017).

Under Rule 12(b)(6), plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. See id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted). The court does, however, "take the plaintiff's factual allegations as true." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 678 (citation omitted). The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594.

Defendant argues plaintiff's bad faith claim must meet the heightened pleading standard established in Rule 9(b). (Docket 12 at pp. 14-15). Rule 9(b) requires a party "alleging fraud or mistake[ to] state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The particularity requirement serves important purposes: First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense." Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC, 781 F.3d 1003, 1010 (8th Cir. 2015).

Rule 9(b) contrasts with Rule 8(a)(2), the pleading standard for most federal cases calling for a "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Plaintiff asserts he need not meet Rule 9(b)'s standard because it does not apply to bad faith claims. (Docket 17 at pp. 12-16). Plaintiff relies on a recent decision from this court, Haney v. Am. Family Mut. Ins. Co., 223 F. Supp. 3d 921 (D.S.D. 2017) (Piersol, J.). (Docket 28).

In the Haney case, Mr. Haney alleged bad faith against his insurer for refusing to pay more than it offered to cover his roof's hail damage. Id. at 923. The insurer moved to dismiss the bad faith claim, arguing Rule 9(b) applied

and Mr. Haney failed to meet the Rule's standard.  Id. at 924-25.  The court

extensively analyzed Rule 9(b) and bad faith, ultimately holding "the

heightened pleading standards of Rule 9(b) do not apply to first-party bad faith

claims under South Dakota law."[3]  Id. at 925-27.  The court explained:

> In an ordinary fraud case, the Rule 9(b) who/what/when/where
> specificity is necessary to apprise the defendant of what it is
> alleged to have done wrong.  Without knowing the particulars of
> the fraudulent statement it is accused of making, a defendant
> cannot respond properly.  Here, however, [the insurer] knows
> exactly what [the insured] contends it did wrong, with regard to a
> specific policy number and claim, plus [the insured's] allegations
> that there was no arguable basis for not paying the claim and that
> [the insurer] knew it.  Armed with this kind of pleading detail,
> defendant is fully equipped to prepare a defense, and cannot
> plausibly profess to be in the dark as to [the insured's] claim.  Rule
> 9(b) has no role here.

Id. at 926 (citing Austin v. Auto Owners Ins. Co., Civil Action No. 12-0345,

2012 WL 310693, at *3 n.7 (S.D. Ala. July 30, 2012)).  Haney provides a well-

reasoned and careful discussion on the specific issue of bad faith claims and

Rule 9(b), and defendant does not provide sufficient reason to upset Haney's

holding.  See id.

Despite Haney, defendant argues the Rule 9(b) standard applies.  (Docket

29).  Defendant argues that even though plaintiff's complaint lacks a fraud

cause of action, it includes allegations of fraud, implicating Rule 9(b).  Id. at

p. 6.

---

[3]"First-party bad faith . . . is an intentional tort and typically occurs
when an insurance company consciously engages in wrongdoing during its
processing or paying of policy benefits to its insured."  Id. at 925 (quoting Hein
v. Acuity, 731 N.W.2d 231, 235 (S.D. 2007)) (internal quotation marks omitted).
In this case, plaintiff advances a first-party bad faith claim.  See id.

In the Eighth Circuit, "[c]laims 'grounded in fraud' must meet [the Rule 9(b)] heightened pleading requirement." Streambend, 781 F.3d at 1010 (quoting United States ex re. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822 (8th Cir. 2009)). "While Rule 9(b) clearly applies to common law claims of fraud, it also applies to claims that require proof of fraud as a prerequisite to establishing liability." Dunne v. Res. Converting, LLC, No. 4:16 CV 1351, 2017 WL 564485, at *6 (E.D. Mo. Feb. 13, 2017) (applying Rule 9(b) to unjust enrichment). The Eighth Circuit noted in Streambend "some of [its] sister circuits also apply Rule 9(b) to associated claims where the core allegations effectively charge fraud." Streambend, 781 F.3d at 1010-11 (citing cases from the United States Court of Appeals for the First and Ninth Circuits) (internal quotation marks omitted). When a complaint does not advance a fraud claim but includes some allegations relating to fraud which fail to meet Rule 9(b), "the only consequence [is that] any allegations of fraud would be stripped from the claim." In re NationsMart Corp. Secs. Litig., 130 F.3d 309, 315 (8th Cir. 1997); see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting this holding from NationsMart in concluding: "if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim. The court should then examine the allegations that remain to determine whether they state a claim.").

Because plaintiff does not assert common law fraud or a fraud-grounded claim, the court reviews the complaint for assertions related to fraud. The

complaint expressly refers to fraud twice.  (Docket 1 at pp. 3, 5).  In the facts

section, plaintiff states: "Defendant unreasonably and <u>fraudulently</u> elevated its

own interests above those of Plaintiff, did not promptly or in good faith pay the

claim of its insured, and refused to settle in good faith, forcing Plaintiff to sue

for the benefit to which he was entitled under his insurance contract."  <u>Id.</u> at

p. 3 (emphasis added).  Plaintiff's punitive damages count asserts: "Defendant

acted with oppression, <u>fraud</u>, express and implied malice, and a reckless

disregard for the interests and rights of Plaintiff by refusing to provide

compensation benefits owed to Plaintiff, entitling Plaintiff to an award of

punitive damages pursuant to SDCL 21-3-2."  <u>Id.</u> at p. 5 (emphasis added).

Even if the court strips the fraud-related aspects from these allegations, the

analysis below shows there is no material change in the sufficiency of plaintiff's

complaint under Rule 12(b)(6).[4]

Although plaintiff's allegations related to fraud must meet Rule 9(b), the

complaint as a whole must meet Rule 8(a)(2).  <u>See</u> <u>Streambend</u>, 781 F.3d at

1010-11; <u>Haney</u>, 223 F. Supp. 3d at 925-27.  Under South Dakota law, a bad

faith claim must show "the existence of a contract of insurance; a loss

compensable under the terms of the policy; the absence of a reasonable basis

for denial of the claim; and that the insurer knew there was not a reasonable

basis to deny the claim or that the insurer acted in reckless disregard of the

---

[4]Defendant also argues the thrust of plaintiff's bad faith claim is an
allegation grounded in fraud.  (Docket 29 at pp. 4-5).  The court rejects this
argument based on the distinctions between fraud and bad faith set out in
<u>Haney</u>.  <u>See</u> 223 F. Supp. 3d at 925-27.

existence of a reasonable basis to deny the claim." <u>Brooks v. Milbank Ins. Co.</u>, 605 N.W.2d 173, 177 (S.D. 2000); <u>see</u> <u>Haanen v. N. Star Mut. Ins. Co.</u>, 1:16-CV-01007, 2016 WL 6237806, at *2 (D.S.D. Oct. 25, 2016) (citing <u>Brooks</u> for the elements of bad faith). As noted earlier, Rule 8(a)(2) mandates "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Although Rule 8(a)(2) is a relatively low threshold, it 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" <u>Haney</u>, 223 F. Supp. 3d at 927 (quoting <u>Iqbal</u>, 556 U.S. at 678-79). The relevant statements in plaintiff's complaint are as follows:

> Plaintiff . . . suffered injuries when an intoxicated tortfeasor, Travis Neal, negligently rear-ended his vehicle . . . on or about October 6, 2011. . . .
>
> Defendant . . . was providing underinsured motorist coverage to Plaintiff in October of 2011. . . .
>
> Plaintiff . . . settled with the tortfeasor's insurance provider, SAFECO Insurance Companies, for payment of $90,000 toward his injuries. . . .
>
> [W]ith total special damages resulting from the collision well in excess of $325,000, counsel for Plaintiff informed Defendant that Plaintiff's underinsured motorist coverage would need to be utilized and requested the $150,000 available within the policy limits of Plaintiff's coverage. . . .
>
> Plaintiff thoroughly detailed and substantiated his significant injuries and losses in writing along with his request to Defendant . . . .
> Defendant responded that it would not be extending coverage in any amount under Plaintiff's policy. . . .
>
> Plaintiff . . . file[d] suit [in South Dakota state court.] . . .
>
> Plaintiff received an offer from Defendant of $50,000 in 'full and final settlement' of his claim . . .

[A] jury . . . awarded $400,000, plus $14,327 in interest, [to plaintiff] for his injuries and damages.

(Docket 1 at pp. 1-3). These allegations mirror those Mr. Haney set forth and this court determined met Rule 8(a)(2). See Haney, 223 F. Supp. 3d at 927-28. Mr. Haney's complaint stated:

> 5. Haney purchased a policy of homeowner's insurance from American Family, which was in effect before and after June 2014.
>
> 6. In June 2014, Haney's home was damaged in a hailstorm.
>
> 7. The . . . hailstorm caused . . . damage to Haney's shake shingle roof.
>
> 9. Haney submitted a timely claim to American Family . . . .
>
> 13. Adam Palace [an authorized agent of American Family] listed $3,890.15 as a reasonable amount to repair the damages to the shingles of Haney's home.
>
> 22. American Family [ ] received a . . . report establishing that $68,259.61 was needed to properly repair the damage . . . .
>
> 23. American Family then conducted another inspection of Haney's roof . . . .
>
> 24. The [report from the second inspection] established that "Functional hail damage was evident on all slopes of this roof" . . . .
>
> 28. American Family told Haney . . . that "Nothing additional is owed on your claim."

Id. at 927.

The Haney court decided "[i]t is clear . . . that the pleadings are not mere conclusions." Id. Taking "plaintiff's factual allegations as true[,]" Braden, 588 F.3d at 594, the court finds plaintiff's complaint in this case justifies the same determination: plaintiff states facts setting forth a bad faith claim "plausible on

18

its face." <u>Twombly</u>, 550 U.S. at 570.  Plaintiff's complaint meets Rule 8(a)(2) and the court denies defendant's Rule 12(c) motion to dismiss.

## B.  CLAIM PRECLUSION

Defendant's second argument for dismissal is claim preclusion.  (Docket 11 at p. 3).  The court previously addressed the legal principles of res judicata. <u>See</u> <u>supra</u> Section I.B.  "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]" <u>Weber</u>, 898 N.W.2d at 733 (internal quotation marks omitted).  For claim preclusion to apply under South Dakota law, "four elements must be established: (1) a final judgment on the merits in an earlier action; (2) the question decided in the former action is the same as the one decided in the present action; (3) the parties are the same; and (4) there was a full and fair opportunity to litigate the issues in the prior proceeding." <u>L.S.</u>, 721 N.W.2d at 89-90.  The court addresses the second element at the outset.

## i.  SAME QUESTION

"Under South Dakota law, . . . '[t]he test for determining if both causes of action are the same is a query into whether the wrong sought to be redressed is the same in both actions.' " <u>Hanig v. City of Winner, S.D.</u>, 527 F.3d 674, 677 (8th Cir. 2008) (quoting <u>Bank of Hoven v. Rausch</u>, 449 N.W.2d 263, 266 (S.D. 1989)).  "[T]he Eighth Circuit [ ] in <u>Hanson v. Hunt Oil Co.</u>, 505 F.2d 1237, 1240 (8th Cir. 1974), established the test which [the South Dakota Supreme Court] has repeatedly applied: whether the wrong for which redress is sought is

the same in both actions." Dakota, 720 N.W.2d at 661 (internal quotation marks omitted).

Defendant asserts "South Dakota law again instructs that this Court should turn to the Restatement (Second) of Judgments § 24 in resolving this question." (Docket 12 at pp. 22-23). In support, defendant cites two cases. Id. at p. 22. One is First National Bank, a federal case, which, as the court explained above, is not applicable. See First Nat'l Bank, 2008 WL 895931, at *4-5; supra Section I.B.i. Defendant also cites Am. Family Ins. Group v. Robnik, 787 N.W.2d 768, 774 (S.D. 2010). In Robnik, the South Dakota Supreme Court cites the Restatement for overarching res judicata principles and does not mention or adopt the transaction test. Id. at 774-76. For reasons parallel to the court's explanation regarding South Dakota law and the Restatement's transaction test, the court rejects defendant's argument.

In his state court case, plaintiff alleged defendant breached its contract with plaintiff to provide underinsured motorist coverage. See supra Section I.B.i.; (Docket 13-1). "First-party bad faith, on the other hand, is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." Hein, 731 N.W.2d at 235. "In these cases, the parties are adversaries, and therefore, an insurer is permitted to challenge claims that are fairly debatable. However, a frivolous or unfounded refusal to comply with a duty under an insurance contract constitutes bad faith." Id.

"A breach of contract is defined as '[a] violation of a contractual obligation, either by failing to perform one's own promise or by interfering with another party's performance.'" Weitzel v. Sioux Valley Heart Partners, 714 N.W.2d 884, 894 (S.D. 2006) (quoting Black's Law Dictionary 182 (7th ed. 1999)). "'A breach may be one by non-performance, or by repudiation, or by both.'" Id. (quoting Black's Law Dictionary 182 (7th ed. 1999)). In contrast, "bad faith can extend to situations beyond mere denial of policy benefits." Dakota, 771 N.W.2d at 629. "Bad faith conduct may include the failure to conduct a reasonable investigation concerning the claim." Id. "A bad faith claim in South Dakota may be based on a 'failure to comply with a duty under the insurance contract,' but still must involve 'an insurance company consciously [engaging] in wrongdoing.'" Anderson v. W. Nat. Mut. Ins. Co., 857 F. Supp. 2d 896, 904 (D.S.D. 2012) (quoting Dakota, 771 N.W.2d at 629).

A plaintiff asserting breach of contract seeks redress for the wrong of "violation of a contractual obligation . . . ." Weitzel, 714 N.W.2d at 894. Plaintiffs taking aim at bad faith target much more. "A bad faith claim is tortious in nature and intended to (1) punish an insurer in order to deter future 'acts deemed socially unacceptable' and (2) compensate a claimant for the loss of damages caused by the bad faith conduct." Tripp v. W. Nat. Mut. Ins. Co., 664 F.3d 1200, 1206 (8th Cir. 2011) (quoting Trouten v. Heritage Mut. Ins. Co., 632 N.W.2d 856, 863-64 (S.D. 2001)). The "wrong for which [they seek] redress," Dakota, 720 N.W.2d at 661, "must 'involve 'an insurance company consciously [engaging] in wrongdoing.'" Anderson, 857 F. Supp. 2d

21

at 904 (quoting <u>Dakota</u>, 771 N.W.2d at 629).  The court finds this element of claim preclusion is not met.  Defendant's motion to dismiss count II on this ground is denied.

## III.  COUNT III: ATTORNEY'S FEES

Plaintiff's claim for attorney's fees states:

> The denial of full payment of benefits owed pursuant to Plaintiff's underinsured motorist claim was made vexatiously and without reasonable cause, entitling Plaintiff to an award of attorney's fees incurred in an effort to secure Defendants' compliance with the terms of the policy coverage, pursuant to SDCL 58-12-3.

(Docket 1 at p. 4).[5]

Defendant, assuming plaintiff's breach of contract claim fails, argues this claim should be dismissed because it must be supported by breach of contract and not bad faith.  (Docket 12 at pp. 27-28).  In interpreting SDCL § 58-12-3, the Eighth Circuit held, "[w]e see no provision in South Dakota law for assessment of attorney fees in tort actions challenging an insurer's handling of an insurance claim."  <u>Kirchoff v. Am. Cas. Co., of Reading, Penn.</u>, 997 F.2d 401, 407 (8th Cir. 1993); <u>see</u> <u>Isaac v. State Farm Mut. Auto. Ins. Co.</u>, 522 N.W.2d 752, 763 (S.D. 1994) (citing <u>Kirchoff</u> for this holding).  This is a tort action because the court dismissed plaintiff's breach of contract claim.  <u>See</u>

---

[5]For this cause of action, plaintiff's complaint also includes citations to South Dakota law on unfair trade practices.  (Docket 1 at p. 4).  Plaintiff's brief states this was an error and he has no objection to the court dismissing this aspect of his attorney's fees claim.  (Docket 17 at p. 32).  The court dismisses plaintiff's claim for attorney's fees pursuant to SDCL § 58-33-46.1.

supra Section I.  Under <u>Kirchoff</u>, the court must dismiss the third count in plaintiff's complaint for attorney's fees pursuant to SDCL § 58-12-3.[6]

## IV.  COUNT IV: PUNITIVE DAMAGES

Plaintiff's final cause of action is for punitive damages and asserts:

> Defendant acted with oppression, fraud, express and implied malice, and a reckless disregard for the interests and rights of Plaintiff by refusing to provide compensation benefits owed to Plaintiff, entitling Plaintiff to an award of punitive damages pursuant to SDCL 21-3-2.

(Docket 1 at p. 5).

Assuming the court would dismiss plaintiff's bad faith claim, defendant first argues this claim should be dismissed because it is not properly grounded in a bad faith claim.  (Docket 12 at p. 30).  This argument fails because the court rejected defendant's argument for dismissing plaintiff's bad faith claim. <u>See</u> <u>supra</u> Section II.

Defendant next argues for dismissal based on Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket 12 at pp. 30-32).  The court stated the legal standard for Rule 12(c) above.  <u>See</u> <u>supra</u> Section II.A.[7]

---

[6]Denying attorney's fees under SDCL § 58-12-3 need not completely foreclose recovery of any attorney's fees related to this case.  <u>See</u> <u>Hurley v. State Farm Mut. Auto. Ins. Co.</u>, No. CIV. 10-4165, 2012 WL 6012803, at *2-6 (D.S.D. Dec. 3, 2012) ("In the insurance context, attorney's fees incurred while litigating a breach of contract action are generally available as an element of compensatory damages in a bad faith action.")

[7]As it does with plaintiff's bad faith claim, defendant contends the heightened pleading standard of Rule 9(b) should apply to plaintiff's punitive damages claim.  (Docket 12 at pp. 31-32).  Even if Rule 9(b) did apply and the court disregarded the fraud-related aspect of count IV, the court's conclusion on the motion to dismiss this claim does not change.

"Under South Dakota law, punitive damages may not be recovered unless expressly authorized by statute." <u>Haney</u>, 223 F. Supp. 3d at 928 (citation and internal quotation marks omitted). South Dakota law authorizes punitive damages:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

SDCL § 21-3-2. Plaintiff may seek punitive damages in a bad faith action if he sufficiently alleges "oppression, fraud, *or* malice . . . ." <u>Id.</u> (emphasis added); <u>see</u> <u>Haney</u>, 223 F. Supp. 3d at 928. "South Dakota courts have found that '[a]n insurer's clear breach of contract or denial of a claim that is not fairly debatable may indicate malice.' " <u>Haney</u>, 223 F. Supp. 3d at 928 (quoting <u>Bertelsen v. Allstate Ins. Co.</u>, 796 N.W.2d 685, 699 (S.D. 2011)). "[M]alice is either actual or presumed." <u>Id.</u> "Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill will towards that person. Presumed malice may not, however, be motivated by hatred or ill will, but is present when a person acts willfully or wantonly to the injury of others." <u>Case v. Murdock</u>, 488 N.W.2d 885, 891 (S.D. 1992).

Earlier the court stated the facts supporting plaintiff's bad faith claim. <u>See</u> <u>supra</u> Section II.A. The court must take those "factual allegations as true." <u>Braden</u>, 588 F.3d at 594. Those facts sufficiently articulate malice and a claim

for punitive damages that is "plausible on its face." <u>Twombly</u>, 550 U.S. at 570; <u>see</u> <u>Haney</u>, 223 F. Supp. 3d at 928-29 (denying a motion to dismiss punitive damages grounded in similar facts). The court denies defendant's motion to dismiss plaintiff's claim for punitive damages under Rule 12(c).

### ORDER

Based on the above analysis, it is

ORDERED that defendant's motion to dismiss (Docket 11) is granted in part and denied in part. Counts I and III of plaintiff's complaint are dismissed. Counts II and IV are not dismissed.

Dated September 21, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE